UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re

SELENA J. MORRA,

                Debtor.
-------------------------------------------------------------x
ROBERT L. PRYOR, as Chapter 7 Trustee of
the Bankruptcy Estate of Selena J. Morra,

                Plaintiff,

-against-

FIDELITY INVESTMENTS INSTITUTIONAL
SERVICES CO., INC. and SELENA MORRA,

                Defendants.
-------------------------------------------------------------x

Chapter 7

Case No. 04-81042-CEC

Adv. Pro. No. 06-8099-CEC

## DECISION

APPEARANCES:

| | |
|---|---|
| Robert L. Pryor, Esq. | Vincent Cuocci, Esq. |
| Pryor & Mandelup, LLP | Feinsilver & Cuocci, LLC |
| 675 Old Country Road | One Old Country Road, Suite 125 |
| Westbury, NY 11590 | Carle Place, NY 11514 |
| Attorneys for the Chapter 7 Trustee | Attorneys for Debtor |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

1

This matter comes before the Court on the motion of Robert L. Pryor (the "Trustee"), the chapter 7 trustee of the estate of Selena J. Morra (the "Debtor"), for summary judgment in this adversary proceeding, seeking to avoid contributions made by the Debtor to a 401(k) plan during the four years prior to the commencement of this bankruptcy case, based on the theory that these contributions constituted constructive fraudulent conveyances pursuant to New York Debtor & Creditor Law ("DCL") § 273. Also before the Court is the Debtor's cross-motion for summary judgment. For the following reasons, both motions are denied.

## Jurisdiction

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), and (H) and 1334, and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusion of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Background

The following facts are undisputed, or are matters of which judicial notice may be taken.

On February 23, 2004, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. On Schedule B, the Debtor listed an interest in a "pension" valued at $3,000 as an asset, and on Schedule C, claimed that asset as exempt pursuant to DCL § 282(iii)(2)(e). On Schedule F, the Debtor listed unsecured debt totaling $33,196, consisting of student loans and credit card debt.

At the first meeting of creditors pursuant to § 341 of the Bankruptcy Code, the Debtor testified that the value of the "pension" was $23,000. From the Debtor's testimony, the Trustee learned that, during the four years before filing for bankruptcy protection, the Debtor made 48

monthly contributions of $446.00 each (the "Contributions") to a 401(k) plan established by Verizon, the Debtor's employer. Other than her interest in the 401(k) plan, the Debtor did not own any assets of value at the time each of the Contributions were made. At the time the Contributions were made, the Debtor was liable for student loan debt, and was also indebted to Citibank.

On March 8, 2005, pursuant to § 727 of the Bankruptcy Code, the Debtor was granted a discharge of her debts.

On February 23, 2006, the Trustee commenced this adversary proceeding to avoid the Contributions made by the Debtor to her 401(k) plan. Invoking his authority under § 544 of the Bankruptcy Code to set aside certain transfers avoidable under state fraudulent conveyance law, the Trustee seeks to avoid the Contributions under a theory of constructive fraud pursuant to DCL §§ 273 and 275, and under a theory of actual fraud pursuant to DCL § 276.[1]

## Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When cross-motions for summary judgment are pending, '[e]ach individual summary judgment motion must be evaluated independently.'" Healey v. Thompson, 186 F. Supp. 2d 105, 113 (D. Conn. 2001), *aff'd in part, vacated in part on other grounds*, Lutwin v. Thompson, 361 F.3d 146 (2d Cir.

---

[1] On July 26, 2006, the Trustee dismissed the action against defendant Fidelity Investments Institutional Services Co., Inc.

2004). A court is not required to grant one party's motion because the other party's motion was denied. Otis Elevator Co. v. Factory Mut. Ins. Co., 353 F. Supp. 2d 274, 279 (D. Conn. 2005).

When deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue of material fact to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." Id. at 248. No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). On the other hand, if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." Rosenman & Colin LLP v. Jarrell (In re Jarrell), 251 B.R. 448, 450-51 (Bankr. S.D.N.Y. 2000) (citations omitted).

Here, both motions for summary judgment must be denied for the reasons set forth below.

## Discussion

A.    Trustee's Motion

The Trustee argues that he is entitled to summary judgment on the basis that the Contributions were constructively fraudulent pursuant to DCL § 273. The Trustee also seeks to recover the Contributions for the estate based on the argument that they are non-exempt under New York Civil Practice Law and Rules ("CPLR") § 5205(c)(5).

4

At the outset, the Trustee's arguments that the Contributions are non-exempt under CPLR § 5205(c)(5) must be rejected. This argument was addressed at length in this Court's decision in the Debtor's bankruptcy case denying the Trustee's motion to disallow the Debtor's exemption in the 401(k) plan. (Decision dated Sept. 5, 2008, Case No. 04-81042, Docket #55.) That ruling, which applies to the instant motion, will not be repeated here at length, but may be summarized as follows: CPLR § 5205(c)(5) limits the exemption of property pursuant to CPLR § 5205(c)(1) and (2). Because the Debtor claimed her exemption in the 401(k) plan pursuant to DCL § 282(iii)(2)(e), which is an entirely separate statutory basis for exemption, CPLR § 5205(c)(5) has no application to the instant avoidance action.

Notwithstanding the inapplicability of CPLR § 5205(c)(5), by virtue of § 544, which permits the Trustee to seek avoidance of certain transfers recoverable under state law, the Trustee may seek to set aside the Contributions pursuant to the DCL. Section 273 of the DCL provides that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. Debt. & Cred. Law § 273. Section 270 of the DCL provides that the term "'[c]onveyance' includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." N.Y. Debt. & Cred. Law § 270.

The Debtor argues that the Contributions do not constitute "conveyances" within the meaning of DCL § 270 because they were not made to a third party.[2] On its face, DCL § 270 does not include a requirement that a transfer be made for the benefit of a third party in order to constitute a conveyance. Furthermore, a number of courts have held that the conversion of nonexempt assets to exempt assets, if made with intent to hinder, delay or defraud creditors, may be avoided. See e.g., In re Orr, No. 07-81177, 2008 WL 244168, at *3 (Bankr. C.D. Ill. Jan. 28, 2008) ("A debtor's conversion of nonexempt assets to exempt assets may constitute a 'transfer' under the Bankruptcy Code . . . [which] may be subject to avoidance and recovery on a fraudulent transfer theory." (citations omitted)); Barber v. Dunbar (In re Dunbar), 313 B.R. 430, 438 (Bankr. C.D. Ill. 2004) (transfer of funds from debtors' savings account to 401(k) account is a "transfer" within the meaning of § 548(a)(1) of the Bankruptcy Code). To conclude that contributions by a debtor to a 401(k) plan are not "conveyances" within the meaning of DCL § 270, would shield such transfers from avoidance under all circumstances, even where actual fraud is shown. Such an interpretation of "conveyance" is not supported by the terms of DCL § 270 and would be inconsistent with case law permitting avoidance of conversion of assets from nonexempt form where actual fraudulent intent is shown. See Geron v. Schulman (In re Manshul Const. Corp.), No. 96B44080, 2000 WL 1228866, at *43 n.7 (S.D.N.Y. August 30, 2000) ("[I]f a transfer is fraudulent under the DCL, it is also fraudulent under Section 548 of the [Bankruptcy]

---

[2] In fact, the Debtor's Contributions to the 401(k) plan do constitute a transfer to an entity separate from the Debtor. In arguing that the Contributions do not constitute a transfer to a third party, the Debtor seems to be making the point that, in exchange for the Contributions, she received an interest in the 401(k) plan, just as she would have if she had transferred funds to a seller in exchange for an ownership interest in any other asset. This argument therefore goes rather to the issue of fair consideration.

Code."); In re Schwartz, 58 B.R. 923, 926 n.2 (Bankr. S.D.N.Y. 1986) (DCL §§ 273, 276 and 278 and § 548 are substantially similar).

The Trustee argues that he is entitled to summary judgment pursuant to DCL § 273 because the Contributions were not made in exchange for fair consideration. DCL § 272 provides in relevant part that fair consideration is given for property "[w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." N.Y. Debt. & Cred. Law § 272(a).

To succeed on his motion for summary judgment, therefore, the Trustee must show that the Contributions were made for less than fair equivalent value or that they were not made in good faith. See United States v. McCombs, 30 F.3d 310, 324 (2d Cir. 1994) (burden rests on party challenging the conveyance); Lippe v. Bairnco Corp., 249 F. Supp. 2d 357, 376 (S.D.N.Y. 2003) (constructive fraud must be shown by a preponderance of the evidence); Gray v. Fill (In re Fill), 82 B.R. 200, 216 (Bankr. S.D.N.Y. 1987) (fair consideration requires "an equivalent exchange of value *and* good faith").

The Trustee relies on United States v. Evseroff, No. CV-00-6029, 2006 WL 2792750 (E.D.N.Y. Sept. 27, 2006), vacated and remanded, 270 Fed. Appx. 75 (2d Cir. 2008), in support of his argument that the Contributions were not made in exchange for fair consideration. In that case, to satisfy tax liability, the government sought to seize property held in a trust established by the taxpayer for the benefit of his sons. Evseroff, 2006 WL 2792750, at * 1. Without an analysis of DCL § 272, the Evseroff court stated that "there was no consideration for the transfer to the [t]rust." Id. at *5. The court then went on to consider whether the taxpayer was insolvent at the time the property was transferred to the trust.

      The facts in this case differ significantly from those presented in Evseroff.  There, the taxpayer transferred property to an irrevocable trust for the benefit of his children, and did not retain a beneficial interest in the assets, or receive anything in return.  Here, in return for the Contributions, the Debtor received an interest in the 401(k) plan at least equal in value to the Contributions.

      The Trustee argues that the Debtor's interest in the 401(k) plan does not constitute fair consideration because the Contributions were transfers made to a "separate juridical entity" (i.e., the 401(k) plan), and resulted in the removal of these assets from creditors' reach because the Debtor's interest in the 401(k) plan is an exempt asset.  However, the fact that assets have been converted to exempt form, and thereby placed beyond the reach of creditors, does not automatically result in the conclusion that a transfer was fraudulent.  See Gill v. Stern (In re Stern), 345 F.3d 1036, 1044 (9th Cir. 2003) (in the context of an avoidance action under California law, stating that the conversion of non-exempt assets into exempt assets, without more, is insufficient to establish fraud); Jensen v. Dietz (In re Sholdan), 217 F.3d 1006, 1010 (8th Cir. 2000) (in the context of an objection to a debtor's homestead exemption, stating that "[i]t is well settled that the mere conversion of non-exempt assets to exempt assets is not in itself fraudulent"); Bank of Pa. v. Adlman (In re Adlman), 541 F.2d 999, 1004 (2d Cir. 1976) (in the context of an objection to discharge, stating that "the exchange by the bankrupt, on the eve of bankruptcy, of non-exempt property for exempt property, is not itself a fraud on his creditors" (citing Forsberg v. Sec. State Bank, 15 F.2d 499, 502 (8th Cir. 1926))); Gugino v. Orlando (In re Ganier), 403 B.R. 79, 85 (Bankr. D. Idaho 2009) (in the context of an avoidance action, stating that "[t]he prebankruptcy conversion of non-exempt assets to exempt assets is not per se

8

fraudulent, but neither is it per se proper and insulated from scrutiny and possible avoidance"); In re Keating, No. 05-CV-5921, 2006 WL 2690239 at *5 (E.D.N.Y. 2006) (denying the trustee's objection to the exemption of an annuity contract, noting that "[u]tilizing available exemptions and engaging in pre-bankruptcy planning, without more, is not indicative of actual intent to defraud creditors"); In re Miller, 113 B.R. 98, 104-105 (Bankr. D. Mass. 1990) (in the context of an objection to a homestead exemption, holding that "[t]he [d]ebtor's availing himself of an exemption that state law makes available to him is not a fraudulent transfer [under Massachusetts law]," and stating that "[a] debtor's conversion of non-exempt assets into exempt assets on the eve of bankruptcy in order to shield the assets from creditors is not in itself fraudulent" under the Bankruptcy Code).

    Nor does the fact that a debtor has exchanged non-exempt for exempt assets lead to the conclusion that the transfer was for less than fair consideration. This is so because "fair consideration" is analyzed by scrutinizing what the debtor receives in exchange for the transfer. As one court explained, analyzing "reasonably equivalent value" under § 548 of the Bankruptcy Code:

> It is from the DEBTORS' perspective, however, that the value received must be viewed. The language of the statute is plain–the transfer is not avoidable if the debtor received reasonably equivalent value. The statute does not require that the net value of the debtor's estate available for distribution to creditors remain the same. Under a balance sheet analysis, the DEBTORS' net worth is the same post-transfer as pre-transfer. The reasonable equivalence standard is satisfied, notwithstanding the shift to an exempt asset.

Dunbar, 313 B.R. at 437 (footnote omitted). Accord, Butler v. Loomer (In re Loomer), 222 B.R. 618, 622-623 (Bankr. D. Neb. 1998) (finding that debtor received reasonably equivalent value in

exchange for transfers to exempt retirement plan, by virtue of the resulting increase in the value of his retirement account).

The facts and legal issues before the court in Dunbar parallel those presented here. There, the chapter 7 trustee sought to recover as a constructively fraudulent conveyance the debtors' transfer of funds from a non-exempt savings account to an exempt 401(k) plan approximately six months before filing their bankruptcy case. The court rejected the argument that no transfer occurred when the funds were paid from the savings account to the 401(k) plan, but found that reasonably equivalent value had been given, noting that "the amount of the debit to the savings account is equal to the amount of the credit to the 401(k) account." Dunbar, 313 B.R. at 437.

Although the Dunbar court analyzed § 548 of the Bankruptcy Code, the same analysis can properly be applied to the meaning of "fair consideration" under DCL § 272. "Under DCL § 272, 'fair consideration' means a fair equivalent that the *debtor* receives in exchange for its property or obligation." HBE Leasing Corp. v. Frank, 48 F.3d 623, 638 (2d Cir. 1995). Nothing in the language of DCL § 272 requires the court to find that the value of the debtor's non-exempt assets remains the same in order to conclude that the debtor has received a "fair equivalent" for the transfer. As the Dunbar court noted:

> To hold under the facts here, that constructive fraud has been proved, would permit the trustee to recover every exempt asset converted from a nonexempt asset by an insolvent debtor. That result would run contrary to the firmly embedded and longstanding bankruptcy policy that permits debtors to convert nonexempt property into exempt property in order to maximize the exemptions to which they are entitled.

Dunbar, 313 B.R. at 438.

One fact emphasized by the Trustee, that in making the Contributions to her 401(k) plan, the Debtor was transferring funds to a "separate juridical entity," is not relevant to this analysis. A transfer of funds to a non-exempt money market or brokerage account, rather than to an exempt 401(k) plan, also constitutes a transfer to a separate juridical (legal) entity – i.e., the financial institution in which the account is held. The transferor receives in exchange an interest in the account (or an obligation of the financial institution to pay), just as the Debtor received an interest in the 401(k) plan in exchange for the Contributions. A transfer to a "separate juridical entity" is not automatically a transfer for less than fair value; fair value depends on what is received by the transferor in return.

In this case, the Debtor received, at a minimum, an interest in the 401(k) plan equal to the amount of the Contributions. Thus, the Debtor received fair equivalent value in exchange for the Contributions.

DCL § 272 defines "fair consideration" as an exchange of fair equivalent value given "in good faith." N.Y. Debt. & Cred. Law § 272. Many courts have noted the difficulty of determining the meaning of "good faith" for the purpose of New York's constructive fraudulent conveyance law. "Good faith is an elusive concept in New York's constructive fraud statute. It is hard to locate that concept in a statute in which 'the issue of intent is irrelevant.'" Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.), 403 F.3d 43, 54 (2d Cir. 2005) (quoting United States v. McCombs, 30 F.3d 310, 326 n. 1 (2d Cir. 1994); see also McCombs, 30 F.3d at 326 n. 1("We are not entirely clear from the case law, however, just how the 'good faith' requirement under section 272 operates in the context of a fraudulent conveyance claim under section 273, a constructive fraud statute where the issue of intent is irrelevant."). One

formulation of this standard is set forth in HBE Leasing: when "a transferee has given equivalent value in exchange for the debtor's property, the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme." HBE Leasing, 48 F.3d at 636.

It is unnecessary to consider at this juncture how good faith for the purposes of DCL § 272 would be analyzed in the context of this case, where the Debtor is both the maker and the beneficial recipient (through her interest in the 401(k) plan) of the transfers at issue. The Trustee has provided no evidence that the Contributions were either made or received in anything other than good faith. Given that the Contributions were made for fair equivalent value, and that there is no evidence of bad faith, it is not possible to conclude that the Contributions were not made for fair consideration. The Trustee's motion for summary judgment must therefore be denied.

B. Debtor's Motion

The Debtor argues that she is entitled to summary judgment because she was solvent at the time the Contributions were made, and because she received fair consideration in exchange for the Contributions. The Debtor seeks summary judgment on all the claims asserted in the complaint, including DCL §§ 273, 275, and 276.[3]

The Debtor asserts that she was solvent because "she was in fact paying her monthly obligations as they came due with a fair degree of regularity," and that "[w]hile [she] may have fallen behind on the monthly payments from time to time, overall she was properly servicing her

---

[3] Section 275 of the DCL provides that "[e]very conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 275. Section 276 of the DCL provides for the avoidance of "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors." N.Y. Debt. & Cred. Law § 276.

debts and had a positive net worth." (Debtor's Opp'n ¶ 15.) The only evidence submitted in support of this assertion is the Debtor's deposition testimony, which does not support the conclusion that she "was in fact paying her monthly obligations as they became due with a fair degree of regularity" or that "overall she was properly servicing her debts": she testified that she was current on "maybe three or four" of her six debts that required monthly payments, and that she fell behind on her payments within the year prior to filing for bankruptcy. (Trustee's Ex. D, Debtor's Dep. Test. at 18-19, 21, 23.)

Nor does the record support the conclusion that the Debtor had a positive net worth. The Debtor argues that her entire debt of $33,196 should not be taken into account when determining liability, but only the amounts of her required monthly payments. This argument reflects a misunderstanding of the applicable legal standard. Section 270 of the DCL provides that "'[d]ebt' includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." N.Y. Debt. & Cred. Law § 270. In determining whether a party is insolvent under the DCL, the court must consider a debtor's probable liability on debts that have not yet become due. Hirsch v. Gersten (In re Centennial Textiles, Inc.), 220 B.R. 165, 174 (Bankr. S.D.N.Y. 1998) (long term debt is considered in evaluating insolvency under DCL § 271); compare Allen Morris Commercial Real Estate Servs. Co. v. Numistatic Collectors Guild, Inc., No. 90 CIV. 264, 1993 WL 183771, at *8 (S.D.N.Y. May 27, 1993) ("The statute's reference to 'probable liability' includes contractual contingent liabilities such as guaranties and lease obligations.").

The Debtor's argument that her assets, for these purposes, includes her "interest in anticipated future income from a regular source," must also be rejected. (Debtor's Opp'n at ¶ 13.)

Section 271 of the DCL provides that "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y. Debt. & Cred. Law § 271(1). The prospect of earning future income cannot be considered an asset having "salable value," at least where the debtor is an employee at will, subject to termination or layoff with or without cause.

In short, the Debtor has submitted no evidence that, at the time any of the Contributions were made, she was solvent within the meaning of DCL § 270. Having failed to show that there is no genuine issue of material fact on this issue, the Debtor is not entitled to summary judgment on the Trustee's constructive fraud claim under DCL § 273.

However, the principal issue in this adversary proceeding is not the Debtor's solvency at the time she made the Contributions, but whether the Debtor made the Contributions in good faith. Given that the Debtor received fair equivalent value in exchange for the Contributions, if the Contributions were made in good faith,[4] the Trustee's claims under DCL §§ 273 and 275 fail, regardless of the Debtor's solvency, because fair consideration was received in exchange for the Contributions.

Moreover, any determination that the Debtor made the Contributions in good faith would also defeat the Trustee's claim of actual fraud pursuant to DCL § 276, which provides for the avoidance of "[e]very conveyance made and every obligation incurred with actual intent, as

---

[4] Although courts generally examine the good faith of the transferee when deciding constructive fraud claims, HBE Leasing, 48 F.3d at 636, since the Debtor in this case is both the transferor and the beneficial owner of the transferee, (i.e., her interest in the 401(k) plan), a determination that the Contributions were made in good faith would also constitute a determination that they were received in good faith.

distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors."  N.Y. Debt. & Cred. Law § 276.

By the same token, if the Trustee establishes that the Debtor made the Contributions with actual intent to hinder, delay or defraud creditors, the Debtor's solvency is irrelevant, and the Contributions are avoidable pursuant to DCL § 276.

As the record is silent with respect to the Debtor's good faith, or lack thereof, in making the Contributions, the Debtor's motion for summary judgment must be denied.

## Conclusion

For the foregoing reasons, the Trustee's motion for summary judgment and the Debtor's motion for summary judgment are denied, and the issue of the Debtor's good faith in making the Contributions will be set down for a hearing.  A separate order will issue.

Dated:  Brooklyn, New York
        July 21, 2009

> */s/Carla E. Craig*
> CARLA E. CRAIG
> Chief United States Bankruptcy Judge